## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| Maria J. Disen Colon, | : | Case No. 5:04-52421-MJC |
| | : | |
| Debtor. | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| | | |
|---|---|---|
| Maria J. Disen, | : | |
| | : | |
| Plaintiff, | : | Adversary Proceeding |
| | : | No. 5:21-00012-MJC |
| v. | : | |
| | : | |
| Bayview Loan Servicing, LLC, | : | |
| | : | |
| Defendant. | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## M E M O R A N D U M

### I.  INTRODUCTION

Before the Court is the Defendant's motion for summary judgment on the

Debtor/Plaintiff's claim for damages relating to alleged violations of the discharge order entered

almost eighteen (18) years ago in her 2004 Chapter 7 bankruptcy case, alleged violations of the

Fair Debt Collection Practices Act ("FDCPA"), and alleged violations of her Fourteenth (14th)

Amendment rights.  The Defendant, the holder of the mortgage lien against the Plaintiff's home,

argues that its actions were proper and that it is entitled to summary judgment because (i) the

subject debt was incurred after the discharge of the Plaintiff's 2004 bankruptcy case, (ii) any

claims under the FDCPA are time barred, and (iii) any claim under the Fourteenth (14th)

Amendment is prohibited since there was no "state action" relating to this matter.

For the reasons that follow, the Court agrees that there are no material issues of fact

regarding the Debtor/Plaintiff's first claim and that the Defendant did not violate the 2004

Bankruptcy Discharge Order.  However, since the remaining claims are not "related to" the Bankruptcy Case, this Court will issue a separate Report and Recommendation to withdraw the reference and transfer those claims back to the United States District Court for the Middle District of Pennsylvania.

## II.  PROCEDURAL HISTORY

On May 11, 2004, the Plaintiff Maria J. Disen Colon n/k/a Maria J. Disen ("Plaintiff" or "Debtor"), filed her Voluntary Petition under Chapter 7 of the Bankruptcy Code.[1]  On August 30, 2004, the Plaintiff received her discharge.

Fast forward many years later to March 22, 2021, the Plaintiff filed a complaint ("Complaint") against the Defendant Bayview Loan Servicing, LLC ("Defendant" or "Bayview") in the United States District Court for the Middle District of Pennsylvania (Case No. 3:21-cv-521).  The Complaint alleges "civil contempt" violations by the Defendant of the discharge order in her 2004 Chapter 7 bankruptcy case, violations of the FDCPA, and alleged violations of her Fourteenth (14th) Amendment rights.  The Plaintiff seeks relief in the form of actual and punitive damages, as well as, this Court overturning the Monroe County Court of Common Pleas' Order granting the Defendant summary judgment in the state court foreclosure action.

On March 23, 2021, United States Magistrate Judge Joseph F. Saporito, Jr., issued a Memorandum and Order transferring this case to the Bankruptcy Court finding that the "proper venue for this action is the bankruptcy court that adjudicated the debt discharge and lien determination orders upon which the plaintiff's primary claim for federal relief is based."  Disen

---

[1]    At the time and throughout her bankruptcy case, the Plaintiff was represented by Ms. Kimberly D. Martin, Esq.  The Plaintiff is pro se in this adversary action.

v. Bayview Loan Servicing, LLC, No. 3:21-CV-00521, 2021 WL 1110296, at *2 (M.D. Pa. Mar. 23, 2021); Dkt. # 1-2.[2]  The Complaint was promptly transferred to this Court on March 24, 2021.

On June 16, 2021, the Defendant filed an answer ("Answer") denying the Plaintiff's allegations and asserted the following defenses: (i) the refinanced mortgage loan which is the subject of this Complaint was voluntarily entered into by the Plaintiff subsequent to the filing, discharging and closing of Plaintiff's Chapter 7 petition, and prior to the bankruptcy case being re-opened, (ii) to the extent that the Plaintiff's Complaint is seeking relief from state court judgments in the federal court, such review would be barred by the Rooker-Feldman doctrine,[3] and (iii) to the extent that the Plaintiff's Complaint is seeking to re-litigate issues raised in previous state litigation, it is barred by the doctrine of res judicata.  Dkt. # 6.

On December 9, 2021, Bayview filed a motion to dismiss ("Motion to Dismiss").  Dkt. #15.  Relying upon the Rooker-Feldman doctrine, Bayview requested dismissal of the Complaint in its entirety because the Plaintiff seeks to re-litigate the mortgage foreclosure action that was previously litigated in the Monroe County State Court in favor of the Defendant.  This Court held a hearing on the Motion to Dismiss on February 1, 2022.  After a colloquy with the Court, Bayview agreed that a motion for summary judgment might provide a more efficient resolution of this proceeding because the Motion to Dismiss, as filed, considered only the Plaintiff's claims regarding the foreclosure action, leaving the FDCPA and due process claims unresolved.

---

[2]     Docket entries in the main bankruptcy case are noted as "BK Dkt." and all other docket entries refer to this Adversary Proceeding ("Dkt.").

[3]     Rooker-Feldman is a doctrine of civil procedure enunciated by the United States Supreme Court in two cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine holds that federal courts should not sit in direct review of state court proceedings.

3

On February 10, 2022, Bayview filed the motion for summary judgment ("Motion for Summary Judgment"), Dkt. # 24. The parties filed briefs; however, neither party filed a Statement of Material Facts required pursuant to Local Bankruptcy Rules 7002-1 and 7056-1, which incorporate Local Rule 56.1 of the District Court. Notwithstanding this pleading failure, the Court is able to discern the relevant facts from the record and decide the Defendant's Motion for Summary Judgment as there does not appear to be any dispute as to the operative and material facts.

## III. FACTS

The material facts here are not in dispute. From the parties' submissions, the Court finds the following facts to be relevant:

1.      On May 11, 2004, the Plaintiff/Debtor filed her Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code ("Petition"). BK Dkt. # 1. The Debtor was represented by legal counsel throughout her bankruptcy case.

2.      On May 20, 2004, Debtor filed her bankruptcy schedules and related documents. BK Dkt. # 2.

3.      On Schedule A, the Debtor listed real property located in Tobyhanna, Pennsylvania ("Property") having a value of $73,000.00 and subject to a secured claim of $68,000.00. Correspondingly, on Schedule D, she listed a mortgage, dated June 1, 2000, against the Property in favor of GMAC in the amount of $68,000.00 ("2000 GMAC Mortgage").

4.      The Debtor listed another debt to GMAC, a car loan deficiency balance, in the amount of $30,951.00, which was on her Schedule F. BK Dkt. # 2.

5.     On August 30, 2004, the Debtor received a discharge of her debts, BK Dkt. # 7, and a Final Decree was issued on September 10, 2004, closing her bankruptcy case, BK Dkt. # 10.

6.     In December 2005, the Debtor moved to reopen her case to file a motion to avoid a lien of GMAC Corp. See BK Dkt. # 12. Due to procedural issues the motion had to be refiled, and on April 3, 2006, the Debtor filed the Motion to Avoid a Lien of GMAC Corp. ("Motion to Avoid Lien"). BK Dkt. # 20.

7.     According to the Motion to Avoid Lien, GMAC obtained a judgment against the Debtor on or about November 5, 2002 in the amount of $20,369.98, presumably in Monroe County where the Debtor resided.[4]

8.     On May 17, 2006, the Court, per Judge John J. Thomas, entered an Order granting the Motion to Avoid Lien. BK Dkt. # 23. The Order states:

> Upon review and consideration of the Motion to Avoid Judgment Lien filed by the Debtor, Maria J. Disen-Colon, pursuant to Section 522(f)(1)(A); it is hereby
>
> ORDERED, that the Movant's Motion to Avoid Judgment Lien is GRANTED; and it is further ORDERED, that the judgment lien of GMAC Corp. against the Movant, Maria J. Colon-Disen, and the assets of Maria J. Disen-Colon specifically the real property located at 1519 Titania Road, Tobyhanna, Monroe County, PA 18466, is hereby voided and extinguished; and it is further

---

[4]     This Court notes that the Debtor listed the mortgage debt owed to GMAC as being $68,000.00 in her original schedules but her Motion To Avoid Lien indicates a debt of only $20,369.98. This material discrepancy could have allowed the Chapter 7 Trustee to administer the real property given the substantial equity in the property if that was the amount of the mortgage debt. However, at oral argument on the Motion for Summary Judgment held on March 29, 2022, Counsel for the Defendant and the Plaintiff both indicated that the Plaintiff also owed the car loan deficiency balance to GMAC. This is confirmed by Schedule F which indicates the $30,951.00 debt to GMAC. BK Dkt. # 2.

5

ORDERED, that this Order Avoiding Judgment Lien of GMAC Corp. shall be recorded and/or filed in the Judgment Index in the Monroe County Courthouse.[5]

9.      On July 26, 2006, the case was closed for a second time.  See BK Dkt. # 24.

10.     The loan currently held by Bayview originated in December 2005, which was after the Debtor's bankruptcy case was closed and prior to it being reopened in 2006.

11.     Pursuant to a promissory note dated December 29, 2005, the Debtor borrowed $39,000.00 from Century 21 Mortgage ("Loan").  Def.'s Discovery, Ex. G, Dkt. # 14.

12.     As security for the Loan, the Debtor executed a mortgage dated December 29, 2005, that was delivered to Mortgage Electronic Registration Systems, Inc., as nominee for Century 21 Mortgage, and then recorded on January 4, 2006 in the Department of Records for the County of Monroe at Mortgage Book 2253, Page 7339 as Instrument No. 200600389.  See Motion for Summary Judgment ("MSJ"), Ex. B.

13.     A portion of the Loan proceeds, $18,442.40, was paid to GMAC Mortgage Corporation as a payoff of account number ending in 16100.[6]  Pl.'s Answer to MSJ, Ex. G; Dkt. # 30.  This account number correlates to the 2000 GMAC Mortgage listed on the Debtor's Schedule D.

---

[5]     As will be discussed more fully below, it is important to note that the Order did not satisfy the mortgage lien of GMAC.  It avoided a money judgment entered in Monroe County that apparently related to an auto loan deficiency by GMAC.

[6]     As the Plaintiff admits in her Answer to the Motion for Summary Judgment, she refinanced the existing mortgage on the Property with Century 21 Mortgage on December 29, 2005.  See Dkt. # 30 at 2. The Plaintiff believes that her 2004 bankruptcy case discharged the 2000 GMAC Mortgage.  What the Plaintiff fails to understand is that the 2004 discharge extended to only her in personam liability on the mortgage.  As discussed below, the Property itself continued to be subject to the mortgage lien because secured liens pass through the bankruptcy unaffected.

14.     Subsequent to the Loan closing, GMAC filed a Satisfaction of Mortgage, which was recorded in the land records in Monroe County.  See Def.'s Discovery, Ex. F.

15.     In 2012, Century 21 Mortgage assigned the Loan to JPMorgan Chase Bank, N.A. ("JPMorgan").  See Bayview Loan Servicing, LLC v. Disen, 2020 WL 8365727, at *2 (Pa.Com.Pl. May 28, 2020).

16.     The Debtor then entered into a Loan Modification Agreement with JPMorgan on September 1, 2016, which increased the unpaid principal balance due on the loan to $40,418.49, consisting of the amount loaned by the lender including any past due principal payments, interest, fees and/or costs capitalized.  See MSJ, Ex. D.

17.     On February 15, 2019, JPMorgan assigned its interest in the Loan to Bayview Loan Servicing, LLC, which is now known as Community Loan Servicing, LLC.  See Id., Ex. E.

18.     Due to a payment default, Bayview filed a complaint in Mortgage Foreclosure against the Plaintiff ("Foreclosure Action") in the Pennsylvania Court of Common Pleas, Monroe County ("State Court") (Case No. 8505-Civ-2019).

19.     Bayview filed a motion for summary judgment in the Foreclosure Action, which the Debtor contested.

20.      The State Court entered an Opinion and Order dated May 28, 2020, granting summary judgment in favor of Bayview and against the Debtor ("State Court Judgment").  MSJ, Exs. F & G; Bayview Loan Servicing, LLC v. Disen, 2020 WL 8365727 (Pa.Com.Pl. May 28, 2020).

21.     The Debtor appealed the State Court Judgment to the Superior Court of Pennsylvania ("Superior Court").  See MSJ, Ex. H.  The Superior Court dismissed the Debtor's appeal, due to substantial defects in her appellate brief.  See MSJ, Ex. I; Bayview Loan

7

Servicing, LLC v. Disen, 241 A.3d 476 (Pa. Super. Ct. 2020), appeal denied, 250 A.3d 472 (Pa. 2021).

22.     The Debtor made a further appeal to the Pennsylvania Supreme Court; however, her Petition for Allocatur was denied on March 10, 2021.  See MSJ, Ex. K; Bayview Loan Servicing, LLC v. Disen, 250 A.3d 472 (Pa. 2021).

23.     On March 22, 2021, the Plaintiff filed her pro se Complaint in the United States District Court for the Middle District of Pennsylvania (Civil Action No. 3:21-CV-00521).  The next day, March 23, 2021, United States Magistrate Judge Joseph F. Saporito, Jr., issued a Memorandum transferring this case to the Bankruptcy Court finding that the "proper venue for this action is the bankruptcy court that adjudicated the debt discharge and lien determination orders upon which the plaintiff's primary claim for federal relief is based."  Disen, 2021 WL 1110296 at *2.

24.     The Complaint was entered on this Court's docket on March 24, 2021.

## IV.  THE PARTIES' CONTENTIONS

As stated above, the Plaintiff's Complaint asserts three claims in connection with the Foreclosure Action.[7]  First, the Plaintiff claims that Bayview initiated an "illegal foreclosure complaint" where Bayview was attempting to collect $18,442.40 which had been discharged as part of her 2004 bankruptcy.  The Plaintiff contends that Bayview (and other lenders) deceived her when in actuality the 2000 GMAC Mortgage had been discharged and subsequently, the lien was lifted when the Bankruptcy Court granted her Motion to Avoid Lien in May 2006.  The

---

[7]     The Complaint also alleges several substantive, as well as procedural errors made by the State Court, the Superior Court, and the Prothonotary's Office.  These lengthy allegations are more suited for an appeal and do not appear to have any relevance to the claims alleged.

8

Plaintiff asserts that commencement of the Foreclosure Action was a violation of the 2004 discharge injunction. She seeks a finding of civil contempt, an injunction to stop the foreclosure, the State Court Judgment to be invalidated, and an award of compensatory and punitive damages.

As to this first claim, Bayview argues that the timing of the Loan is determinative in this proceeding. The Debtor's discharge was entered August 30, 2004. The Loan was executed on December 29, 2005, well after her discharge, and therefore, the Loan was in no way affected by the prior discharge injunction. Bayview also asserts that the Debtor raised this issue in the Foreclosure Action, the State Court rejected her arguments, and entered summary judgment in favor of Bayview. Therefore, Bayview believes the Plaintiff's assertions are barred by the Rooker-Feldman doctrine. In response, the Plaintiff baldly asserts that federal courts have jurisdiction to overturn state court judgments.

Second, the Plaintiff claims that Bayview violated the FDCPA by using deceptive practices in the foreclosure complaint as well as failing to apply certain payments in her loan history. Bayview counters by arguing that the Plaintiff's FDCPA claim is barred by the applicable one year statute of limitations.

The Plaintiff's last claim under the Fourteenth (14th) Amendment is peculiar and frankly, difficult to follow. She claims that Bayview brought an illegal foreclosure action that was fraught with manipulated and false information which "allowed a process that denied [her] due process" under the United States Constitution. Compl. ¶ 43. Bayview argues the Fourteenth (14th) Amendment due process claim fails for lack of state action.

Bayview's Motion for Summary Judgment seeks judgment on all claims. However, Bayview has ignored the critical issue of this Court's subject matter jurisdiction, which as a threshold issue, must be addressed before this Court may reach the merits of the Plaintiff's claims.

## V.  SUBJECT MATTER JURISDICTION

### A.     Legal Principles

Even though the parties failed to raise the issue of this Court's subject matter jurisdiction, it is the Court's duty to address the issue <u>sua sponte</u> whenever it is perceived.  <u>In re Mullarkey</u>, 536 F.3d 215, 220-21 (3d Cir. 2008) ("a bankruptcy court must make an initial determination that the claims before it fall within the purview of section 157 of Title 28"); <u>In re Recticel Foam Corp.</u>, 859 F. 2d 1000, 1002 (1st Cir. 1988) ("a court has an obligation to inquire *sua sponte* into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting"); <u>Goldsmith v. Massad (In re Fiorillo)</u>, 494 B.R. 119, 142 (Bankr. D. Mass. 2013) (bankruptcy courts are "obligated to determine whether and to what extent [they] have jurisdiction to hear and determine all counts of the complaints"); <u>Feliciano v. Dubois</u>, 846 F. Supp. 1033, 1041 (D. Mass. 1994) ("a court always had an obligation to consider, even on its own initiative as well as on motion of an opposing party, whether it has subject matter jurisdiction").  "The jurisdiction of the bankruptcy courts is grounded in, and limited by, statute." <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 307 (1995).

Bankruptcy jurisdiction is derived from 28 U.S.C. §1334 and is vested in the district court.  The district court has jurisdiction over two (2) main categories of bankruptcy related matters: (i) "original and exclusive jurisdiction of all cases under title 11" and (ii) "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to

10

cases under title 11." 28 U.S.C. §1334(a), (b). The district court is permitted to refer all cases and proceedings to the bankruptcy court pursuant to 28 U.S.C. §157(a) which provides:

> Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. §157(a). This broad jurisdictional grant allows the bankruptcy courts to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Celotex, 514 U.S. at 308 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). In this district, bankruptcy cases are specifically referred to the bankruptcy court pursuant to the Standing Order of Reference by the United States District Court for the Middle District of Pennsylvania dated March 11, 2016 ("… any and all cases under title 11 and any and all proceedings arising under title or arising in or related to a case under title 11 are referred to the bankruptcy judges for this district").

The bankruptcy court's jurisdiction is comprised of four (4) types of matters: "(1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." Stoe v. Flaherty, 436 F.3d 209, 216 (3rd Cir. 2006); Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 162 (3d Cir. 2004) (citing Torkelsen v. Maggio (In re Guild & Gallery Plus), 72 F.3d 1171, 1175 (3d Cir. 1996)).[8]

---

[8] These types of proceedings are further delineated as "core" or "non-core." Because of the constitutional limits imposed upon bankruptcy court jurisdiction, distinguishing between core and non-core proceedings is vital to the exercise of jurisdiction by a bankruptcy court. A bankruptcy court may hear and finally determine all core bankruptcy proceedings; the parties' agreement is not needed. 28 U.S.C. § 157(b). In non-core "related to" proceedings, however, only the district court may enter final orders absent consent of the parties. 28 U.S.C. § 157(c).

Bankruptcy proceedings "arising under" title 11 are those in which the Bankruptcy Code itself creates a statutory cause of action. Gupta v. Quincy Med. Ctr., 858 F. 3d 657, 662 (1st Cir. 2017) (citing Stoe, 436 F.3d at 217 (noting that "arising under" jurisdiction is limited to proceedings where "the Bankruptcy Code creates the cause of action or provides the substantive right invoked")).

Proceedings "arising in" cases under title 11 are "those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." In re Middlesex Power Equip. & Marine, Inc., 292 F.3d 61, 68 (1st Cir. 2002); see also Gupta, 858 F.3d at 663 (citing Stoe, 436 F.3d at 218 ("[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case.")). Generally, these claims are thought to involve administrative type matters, or matters that could only arise in bankruptcy. Such matters include "orders to turn over property of the estate" and "determinations of the validity, extent, or priority of liens." Stoe, 436 F.3d at 216.

The Third Circuit has established a much-cited standard for determining whether a proceeding is "related to" a bankruptcy. In Pacor, Inc. v. Higgins, 743 F.2d 984 (3rd Cir. 1984), the Court described the test as whether

> the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy… Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate."

Id. at 994.

**B.     This Court Lacks Subject Matter Jurisdiction over the Debtor's Claims under the FDCPA and the Fourteenth (14th) Amendment**

Magistrate Judge Saporito transferred this action to this Court to consider the Plaintiff's claim for violation of the discharge injunction.  However, the Plaintiff's other claims under the FDCPA and the 14th Amendment do not relate in any way to the Plaintiff's 2004 bankruptcy case or the bankruptcy estate.  The Plaintiff's claims are grounded in the documents filed in and related to the Foreclosure Action.  These potential claims arose in 2019 and after.  Because there are no assets in the bankruptcy estate, the Debtor received her discharge, and the case has been closed since 2006, there is no conceivable way these claims could have any "impact upon the handling and administration of the bankrupt estate."  See In re Schuller, 2014 Bankr. LEXIS 764 (Bankr. S.D. Ala. 2014) (bankruptcy court lacked subject matter jurisdiction over FDCPA claim where Chapter 7 discharge had been entered and case had been closed for over a year) (citing cases); In re Arzuaga, 2012 WL 1120673 (Bankr. D. P.R. Apr. 3, 2012) (adversary complaint dismissed after finding bankruptcy court had no jurisdiction over FDCPA claim).  Any potential recovery on these claims will inure to the benefit of the Plaintiff – not the estate or creditors, therefore, the claims do not fall under the "arising in" or "related to" title 11 jurisdiction.  See Schuller, 2014 Bankr. LEXIS 764, at *5.

Once the discharge injunction claim is disposed of, see Part VI, infra, there are no bankruptcy related claims left.  Therefore, this Court will sua sponte recommend that the District Court withdraw the reference over the remaining claims as this Court does not have jurisdiction.  Withdrawal of the bankruptcy reference is determined under 28 U.S.C. §157(d).  Because the Bankruptcy Court cannot make a final determination on the withdrawal of the reference, this Court will recommend that the District Court sua sponte withdraw the reference regarding the non-bankruptcy related claims.

13

**C.** **This Court has Subject Matter Jurisdiction over the Debtor's Claim for Violation of the Discharge Injunction**

In a bankruptcy case, the discharge of debts under §524(a) "operates as an injunction against the commencement or continuation of an action, employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor." 11 U.S.C. §524(a)(2). While there is no statutory mechanism to enforce the discharge injunction, courts have often considered violations under the Bankruptcy Court's inherent power to enforce its own orders. See In re Haemmerle, 529 B.R. 17, 26 (Bankr. E.D. N.Y. 2015); In re Nicholas, 457 B.R. 202, 224 (Bankr. E.D. N.Y. 2011); In re Harlan, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009). Courts have also relied upon the statutory contempt power found in §105. Thus, a claim for violation of the discharge injunction is a core proceeding "arising under" the Bankruptcy Code. This Court therefore has subject matter jurisdiction over the Debtor's primary claim for relief. See In re Harlan, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009); In re Close, 2003 WL 22697825, at *2 (Bankr. E.D. Pa. Oct. 29, 2003).

However, as discussed below, the claim is without merit and summary judgment will be granted in favor of Bayview.

## VI. VIOLATION OF THE DISCHARGE INJUNCTION

**A.** **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(a) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056): "The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." E.g., Steele v. Cicchi, 855 F.3d 494, 500 (3d Cir. 2017); Transguard Ins. Co. of Am. Inc., v. Hinchey, 464 F. Supp. 2d 425, 429 (M.D. Pa. 2006). Thus, the inquiry on a

14

motion for summary judgment is to determine whether there is a disputed issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986); Hinchey, 464 F. Supp. 2d at 430. "A dispute of material fact is 'genuine' only if the evidence 'is such that a reasonable jury could return a verdict for the non-moving party.'" Holbrook v. Jellen, 2017 WL 4401897, at *4 (M.D. Pa. Mar. 8, 2017) (quoting Anderson, 477 U.S. at 248).

The moving party has the initial burden to demonstrate "the absence of a genuine issue of material fact." United States v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the moving party meets this initial burden, then the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). On summary judgment, the court must draw all reasonable inferences in favor of the non-moving party. United States v. 717 S. Woodward St., 2 F.3d 529, 533 (3d Cir. 1993).

Where, as here, the moving party does not carry the burden of proof at trial, the moving party has the initial burden of showing the absence of a genuine issue of material fact. Roemmele, 2011 WL 4804833, at *4. The moving party "has no obligation to produce evidence negating its opponent's case. The moving party merely has to point to the lack of any evidence supporting the non-movant's claim." Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986)).

The Defendant, as the moving party, has established the absence of any issue of material fact and the lack of any evidence by the Plaintiff to support her claim regarding the alleged violation of the discharge order. Accordingly, as set forth below, summary judgment is appropriate in favor of the Defendant on that claim.

**B.     The 2000 GMAC Mortgage Lien Passed Though the Chapter 7 Bankruptcy**

As a starting point, §524(a) acts as a broad injunction that prohibits collection on a claim that has been discharged.  In order to recover for contempt for violation of the discharge injunction, the plaintiff/debtor must establish: that he or she received a discharge; the creditor had notice or knowledge of the discharge; and that creditor intended the acts that violated the discharge injunction.[9]  In re Motichko, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008); accord In re Haltermon, 592 B.R. 311, 316 (Bankr. S.D. Ohio 2018).  The crux of this case turns on a corollary principle, that is, "for a discharge injunction claim to lie, the debt at issue must be within the scope of the debtor's dischargeable debt."  In re Ajasa, 627 B.R. 6, 16 (Bankr. E.D. N.Y. 2021).

The parties do not dispute that the Plaintiff obtained a Chapter 7 discharge of her personal liabilities on August 30, 2004 in her 2004 Chapter 7 case.  A discharge entered under 11 U.S.C. § 727 discharges substantially all of a debtor's liabilities that existed as of the petition date.[10]  Here, the Debtor filed her Petition on May 11, 2004.  Accordingly, substantially all of her debts that existed as of May 11, 2004 were discharged.

Thus, based on the above general principal that a debtor's personal liability on pre-petition debts is discharged, the Plaintiff asserts in her Complaint that the pre-petition 2000 GMAC Mortgage was discharged in her bankruptcy case.  See Compl. ¶ 23.  She further argues that despite the discharge of the 2000 GMAC Mortgage in the amount of $18,442.20, when she

---

[9]     The United States Supreme Court recently determined in Taggard v. Lorenzen, 139 S. Ct. 1795 (2019), that courts should use an objective standard to "hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order."  139 S. Ct. at 1804.

[10]     Specific exceptions to a discharge are enumerated under 11 U.S.C. §523.

16

refinanced with Century 21, that amount was paid to GMAC on its 2000 mortgage. The Debtor asserts that the discharged amount was "passed down" to Bayview and Bayview is still somehow asserting that amount is due in the Foreclosure Action. See Answer to Summary Judgment at 8 ("Bayview … is collect[ing] on the remaining of the discharged amount of $18,442.40."). She cites to the May 17, 2006 Order avoiding the judgment lien of GMAC Corp. as further evidence that the 2000 GMAC Mortgage was discharged and the lien avoided. According to the Debtor, Bayview's Foreclosure Action violates the 2004 discharge injunction because part of the 2005 Loan proceeds were used to pay off the 2000 discharged mortgage. However, the Debtor is incorrect.

What the Debtor fails to understand is that while it is true that her *personal* obligation on the 2000 GMAC Mortgage was discharged in her Chapter 7 bankruptcy, the *Property itself* remained subject to the lien of the 2000 GMAC Mortgage and the creditor may seek to satisfy the obligation by foreclosing on the Property after a Chapter 7 discharge. See In re Porzio, 622 B.R. 20, 25 (Bankr. D. Conn. 2020) ("While the Debtor does not have any in personam liability with respect to the obligations under the notes and mortgages related to his properties, the creditors' liens on those properties survive the Debtor's Chapter 7 discharge and the creditors are still permitted to proceed with their in rem rights with respect to the properties if payments are not timely made."); In re Reed, 274 B.R. 155, 158 (Bankr. W.D. Pa. 2002) ("Section 524(a)(2), in short, does not prohibit the holder of an unavoided lien from enforcing it against a debtor in an in rem proceeding. It prohibits only the commencement or continuation of an action to collect debtor's personal liability that arose in connection with the lien.").

As the United States Supreme Court in Johnson v. Home State Bank, 501 U.S. 78, 82–83 (1991) (emphasis added), explained:

A mortgage is an interest in real property that secures a creditor's right to repayment. But unless the debtor and creditor have provided otherwise, the creditor ordinarily is not limited to foreclosure on the mortgaged property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's in personam liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally. A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation. However, such **a discharge extinguishes only "the personal liability of the debtor."** 11 U.S.C. § 524(a)(1). Codifying the rule of Long v. Bullard, 117 U.S. 617, 6 S. Ct. 917, 29 L. Ed. 1004 (1886), **the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy.**

The Supreme Court stressed that:

a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another—namely, an action against the debtor in rem.

501 U.S. at 84.

At bottom, this means that GMAC's in rem rights to enforce the underlying 2000 mortgage obligation as to the Property were not discharged by the 2004 bankruptcy. GMAC could have filed a foreclosure action against the Property for any payment default on the 2000 mortgage. Such an action would not violate the discharge injunction. See e.g., Reed, 274 B.R. at 158 (holding that post-discharge action in mortgage foreclosure brought under Pennsylvania law does not seek to collect or enforce debtor's personal liability for debt previously discharged in bankruptcy and, consequently, does not violate §524(a)(2) of Bankruptcy Code).

That however, did not happen here. Instead, the Debtor refinanced the 2000 GMAC Mortgage in December 2005. Because the Property was still "on the hook" for the remaining $18,442.40 of the obligation, the 2000 GMAC Mortgage was paid off with the Loan proceeds.

18

Despite the Debtor's protestations, nothing about this transaction was illegal or improper. GMAC had no obligation to release its lien against the Property until the 2000 mortgage was satisfied in full because the 2000 mortgage lien passed through the 2004 bankruptcy unaffected.

The Debtor's reliance on the May 17, 2006 Order avoiding the GMAC judgment is similarly misplaced. The Debtor's Motion to Avoid Lien was based on §522(f)(1)(A) which allows a debtor to avoid a judicial lien to the extent it impairs the debtor's exemptions. It provides:

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> > (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5);

11 U.S.C. §522(f)(1)(A).

In her Motion to Avoid Lien, the Debtor indicated that GMAC obtained a judgment against her on or about November 5, 2002 in the amount of $20,369.98 (presumably in Monroe County where the Property is located). After GMAC did not respond, the Court ordered that the judgment lien against the Debtor and the Debtor's assets, including the Property, was voided and extinguished.

This is likely where the Debtor is confused. Section 522(f)(1)(A) may be used to avoid only judicial liens. As defined by the Bankruptcy Code, a "judicial lien" is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. §101(36). A consensual mortgage lien is not a judicial lien and cannot be avoided under §522(f)(1)(A). See In re Lowry, 27 B.R. 524 (M.D. Pa. 1983) (per Gibbons, J.) ("Since a mortgage is a security interest created by agreement, and since it is apparent that a mortgage

19

does not fit the Bankruptcy Code's definition of a judicial lien, it is obvious that the literal

language of §522(f)(1), allowing for the avoidance of judicial liens, does not provide for the

avoidance of a mortgage."). Therefore, contrary to the Debtor's assertion, the 2006 Order did

not "satisfy" the 2000 GMAC Mortgage that was recorded in Monroe County prior to her 2004

bankruptcy case. It "avoided" only a money judgment entered in Monroe County against the

Debtor to the extent it impaired her exemption.[11]

This conclusion is further bolstered by well-settled bankruptcy law which provides that a

Chapter 7 debtor cannot "strip down" a mortgage lien on real property and that "a lien on real

property passe[s] through bankruptcy unaffected." See Dewsnup v. Timm, 502 U.S. 410, 418

(1992). In Dewsnup, the debtor was attempting to "strip down" a partially unsecured deed of

trust (mortgage) lien on real property. The lien was $120,000.00 which exceeded the value of

the real property of $39,000.00. The debtor sought relief based upon

> the interrelationship of the security-reducing provision
> of §506(a) and the lien-voiding provision of § 506(d).
> Under §506(a) ("An allowed claim of a creditor secured by a lien
> on property in which the estate has an interest... is a secured claim
> to the extent of the value of such creditor's interest in the estate's
> interest in such property"), respondents would have an "allowed
> secured claim" only to the extent of the judicially determined value
> of their collateral. And under § 506(d) ("To the extent that a lien
> secures a claim against the debtor that is not an allowed secured
> claim, such lien is void"), the court would be required to void the
> lien as to the remaining portion of respondents' claim, because the
> remaining portion was not an "allowed secured claim" within the
> meaning of § 506(a).

Dewsnup, 502 U.S. at 413. The Supreme Court analyzed §506(a) and (d) holding

that "§506(d) does not allow petitioner to 'strip down' respondents' lien, because respondents'

---

[11]      It has also become clear that the "avoided" money judgment related to a GMAC car loan
deficiency and not the 2000 GMAC Mortgage.

claim is secured by a lien and has been fully allowed pursuant to §502." Id. at 417.[12]  The

Supreme Court extended this holding in Bank of America v. Caulkett, 575 U.S. 790 (2015), to

prevent a debtor from voiding a mortgage lien that is wholly unsecured.  Given this clear

direction, it cannot be disputed that the 2006 Order avoiding the judgment lien did not alter the

2000 GMAC Mortgage obligation or lien.

Further, as the State Court found, the mortgage at issue now was entered into voluntarily

by the Debtor on December 29, 2005.  As security for that loan, the Debtor voluntarily entered

into a new mortgage in the amount of $39,000.00.  This transaction occurred after the bankruptcy

case was filed and after the Debtor received her discharge.  The Debtor further entered into a

Loan Modification Agreement with the lender on September 1, 2016.  Under these facts, it is

clear that the Defendant's 2005 mortgage was also not affected by the Plaintiff's 2004

bankruptcy case.

Because GMAC's in rem rights against the Property were not discharged and the 2000

GMAC Mortgage passed through the Chapter 7 case unaffected, there has been no violation of

the 2004 discharge injunction.  Accordingly, the Defendant is entitled to summary judgment on

the Plaintiff's claim for violation of the discharge injunction.


## VII.  CONCLUSION

For the reasons stated above, summary judgment shall be entered in favor of the

Defendant as to the claim relating to the alleged violation of the Plaintiff's discharge.  This Court

---

[12]     In a Chapter 13 case, the debtor is also prevented from modifying the rights of a mortgage
secured by the debtor's principal residence pursuant to 11 U.S.C. § 1322(b)(2).  The Supreme Court in
Nobelman v. American Savings Bank, 508 U.S. 324 (1993) held that that a Chapter 13 debtor could not
bifurcate an under-secured claim into a secured claim and unsecured claim reducing the mortgage to the
fair market value of the mortgaged residence.

21

does not have subject matter jurisdiction over the FDCPA and Fourteenth (14th) Amendment claims. The Court will recommend that the District Court withdraw the reference as to those non-bankruptcy claims.

Accordingly, the Court will issue an Order granting summary judgment in favor of the Defendant as to alleged violation of the discharge order and issue a separate Report and Recommendation to the District Court requesting the reference of this adversary proceeding be withdrawn.

Lastly, Local Bankruptcy Rule 5011-1(d) and (e) allows a party to file a response within fourteen (14) days to either a motion to withdraw the reference or the Court's Report and Recommendation with regard to withdrawal of the reference. Therefore, any response to the Court's sua sponte Report and Recommendation may be filed in accordance with L.B.R. 5011-1(d) and (e) in the District Court.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: May 31, 2022

22